UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VON PEZOLD et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 21-cv-2004 (APM) |
| REPUBLIC OF ZIMBABWE, | ) ) ) | |
| Defendant. | ) ) | |
| BORDER TIMBERS LIMITED et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 21-cv-2428 (APM) |
| REPUBLIC OF ZIMBABWE, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Before the court in these related cases are Petitioners' respective motions for summary judgment.  *See von Pezold* Pet'rs' Mot. for Summ. J., ECF No. 74; *Border Timbers* Pet'rs' Mot. for Summ. J., ECF No. 65.[1]  Petitioners ask the court to enforce arbitration awards entered against Respondent Republic of Zimbabwe by an International Center for Settlement of Investment Disputes ("ICSID") tribunal.  For the reasons that follow, the court grants their motions.

---

[1] All citations to the *von Pezold* Docket can be found at No. 21-cv-2004 (APM); all citations to the *Border Timbers* Docket can be found at No. 21-cv-2428 (APM).  Respective case documents are signaled with respective Petitioners' names.

**I.**

In 2010, each group of Petitioners requested that an ICSID tribunal arbitrate their claims against Respondent for its alleged expropriation of their land and other property. *See Border Timbers* Pet. to Enforce Arbitral Award, ECF No. 1, Ex. 1, ECF No. 1-2 [hereinafter *BT* ICSID Ruling], ¶¶ 2, 9, 12, 159. The *von Pezold* petitioners are Elisabeth Regina Merie Gabriele von Pezold, in her personal capacity and as executrix of her deceased husband's estate, and various heirs and assigns. *von Pezold v. Republic of Zimbabwe*, No. 21-cv-2004 (APM), 2022 WL 4078896, at *1 (D.D.C. Sep. 6, 2022). The *Border Timbers* petitioners are Border Timbers Ltd. and Hagani Development Co. (Private) Ltd. *Id.*

The ICSID tribunal ruled in favor of Petitioners. *See BT* ICSID Ruling ¶ 1009; *von Pezold* Pet. to Recognize Arbitration Award, ECF No. 1, Ex. 1, ECF No. 1-2 [hereinafter *VP* ICSID Ruling], ¶¶ 1016–1017. It ordered restitution, requiring Respondent to reinstate full, unencumbered legal title over the disputed lands to Petitioners within 90 days of the award's issuance. *BT* ICSID Ruling ¶ 1012.1-2; *VP* ICSID Ruling ¶ 1020.1. It also ordered compensation, the amount of which depended on whether Respondent timely made restitution. *See BT* ICSID Ruling ¶ 1012; *VP* ICSID Ruling ¶ 1020. If Respondent failed to do so, it would have to pay a much higher sum to compensate Petitioners for the full value of the property, rather than just for the value lost due to expropriation up to that point. *See BT* ICSID Ruling ¶ 1012.3; *VP* ICSID Ruling ¶ 1020.3. Respondent did not make restitution and is thus liable for the higher amount. *See von Pezold* Pet'rs' Mem. in Opp'n to Resp't's Mot. to Dismiss and in Supp. of Cross-Mot. for J. on the Pleadings, ECF No. 18, Decl. of Matthew Coleman, ECF No. 18-1 [hereinafter Coleman Decl.], ¶¶ 27, 31; *von Pezold* Resp't's Omnibus Mem. of P. & A. in Opp'n to the Mots. For Summ. J., ECF No. 76 [hereinafter Resp't's Opp'n]; Decl. of Erica Bramer in Supp. of Resp't's Opp'n,

ECF No. 76-2, ¶ 9.  The tribunal also awarded Petitioners additional compensation for moral damages, pre- and post-award interest, and arbitration costs.  *BT* ICSID Ruling ¶¶ 1012–1015; *VP* ICSID Ruling ¶¶ 1020–1023.

Petitioners then came to this court to enforce the awards pursuant to Article 54 of the ICSID Convention.   Under Article 54, member states—of which the United States is one—must "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by the award within its territories as if it were a final judgment of a court in that State."  International Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention"), art. 54, Mar. 18, 1965, 17 U.S.T. 1270.  The United States codified this obligation at 22 U.S.C. § 1650a, under which district courts shall "enforce[]" such awards and give them "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."

Respondent twice moved to dismiss the petitions.  The court granted Respondent's first motion for Petitioners' failure to effect proper service under the Foreign Sovereign Immunities Act.  *von Pezold*, 2022 WL 4078896, at *1.  The court gave Petitioners 60 days to perfect service. *Id.*  After Petitioners did so, Respondent again moved to dismiss the petitions on multiple grounds, including for lack of jurisdiction and failure to state a claim.  *See von Pezold v. Republic of Zimbabwe*, No. 21-cv-2004 (APM), 2023 WL 5547912, at *2 (D.D.C. Aug. 9, 2023).  The court rejected Respondent's arguments and denied the motion.  *See id.* at *2–4.  The D.C. Circuit affirmed that decision.  *See von Pezold v. Republic of Zimbabwe*, No. 23-7109, 2024 WL 4763943 (D.C. Cir. Nov. 13, 2024) (per curiam).  Petitioners now move for summary judgment.

3

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is one in which, viewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could return a verdict in its favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). And a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.

The court's role in cases brought to enforce ICSID awards is limited. The court "may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515 (D.C. Cir. 2023) (quoting *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017)). The court is "not permitted to examine an ICSID award's merits," *id.*, as "the Convention reflects an expectation that the courts of a member nation will treat the award as final," *Mobil Cerro Negro*, 863 F.3d at 102.

The authenticity of the two awards is undisputed. *See generally, e.g.*, *von Pezold* Resp't's Opp'n, Resp't's Stmt. of Disputed Material Facts, ECF No. 76-1 [hereinafter *VP* Stmt. of Facts] (declining to dispute the date or text of the awards); Coleman Decl., Ex. 7 (Respondent's 2016 letter of assurances to "confirm its intention to honour the [*von Pezold* and *Border Timbers*] Awards" if its efforts to have the awards annulled failed). Notwithstanding the awards' authenticity, Respondent raises several reasons why it believes the court should not enforce them. None are persuasive.

4

**A.**

Respondent first argues that Petitioners lack standing.  Resp't's Opp'n at 3.  To have standing, a plaintiff must show an injury-in-fact, that the defendant caused their injury, and that the injury likely can be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Respondent focuses on the final requirement.  Resp't's Opp'n at 4.  Respondent contends that Petitioners' claim to enforce the ICSID tribunal's awards cannot be redressed by this court because Section 5(2) of Zimbabwe's State Liabilities Act law immunizes Respondent and its property from any "execution or attachment or process in the nature thereof."  *Id.*

Respondent's argument elides the well-established distinction between "execution" and "enforcement."  *See* Restatement (Third) of U.S. Law of Int'l Com. Arb. § 1.1 cmt. m–n (A.L.I. 2024).  Enforcement is "the reduction to a judgment of an international arbitral award," while "execution" is "the means by which a judgment enforcing an international arbitral award is given effect"—in other words, the process of leveraging that judgment to obtain assets.  *Id.* § 1.1(m)–(n); *see also* ICSID Convention art. 54 (describing separate processes for "enforcement" and "execution").  At present, Petitioners seek only enforcement.  Congress expressly granted jurisdiction to the district courts to issue such judgments.  *See* 22 U.S.C. § 1650a.  Meanwhile, the cited provision of Zimbabwean law speaks only to *execution*.  *See von Pezold* Pet'rs' Reply Mem. of L. in Supp. of Mot. for Summ. J., ECF No. 77, Decl. of Daniel Tivadar, ECF No. 77-1, ¶¶ 39–48; *see also Border Timbers* Pet'rs' Reply Mem. of P. & A. in Supp. of Mot. for Summ. J., ECF No. 67 [hereinafter *BT* Reply], Second Decl. of Agmos Moyo on Zimbabwean Law, ECF No. 67-4 [hereinafter Moyo Decl.], ¶ 8.  In fact, in 2023, the High Court of Zimbabwe entered an order recognizing the *von Pezold* and *Border Timbers* awards "as if it were a judgment of the high court."  *von Pezold* Pet'rs' Corrected Opp'n to Zimbabwe's Renewed Mot. to Dismiss,

ECF No. 60, Ex. 3, ECF No. 60-4; *see also* Moyo Decl. ¶ 8. If the cited provision swept as broadly as Respondent argues, the High Court could not have issued such an order. It therefore does not prevent this court from doing the same.

Thus, regardless of the merits of Respondent's arguments as to execution—an issue on which the court offers no opinion—that is entirely separate from the present request for enforcement. The cited portion of the State Liabilities Act affects neither this court's ability to enter judgment in favor of Petitioners nor, in turn, Petitioners' standing to ask this court to do so.

**B.**

Respondent next argues that it is entitled to setoff. Setoff "is a remedy that two entities who owe each other money can use to apply their mutual debts against each other and effectively cancel them out." *Perenco Ecuador Ltd. v. Republic of Ecuador*, No. 19-cv-2943 (JMC), 2023 WL 2536368, at *5 (D.D.C. Mar. 16, 2023). Respondent contends that setoff is warranted based on the value Petitioners have received from continuing to operate the land since issuance of the award. *See* Resp't's Opp'n at 10. This "glaring example of the need to apply setoff," Respondent reasons, "create[s] an issue of fact" that precludes summary judgment. *Id.*

Respondent's requested setoff falls outside the court's limited scope of review. Recall that the court can do no more than examine an award's authenticity and enforce its obligations. *Valores Mundiales*, 87 F.4th at 515. The court cannot entertain challenges to its merits. *Id.* Thus, setoff is inappropriate "when it requires adjudication of substantive issues implicating the merits of the award." *Perenco*, 2023 WL 2536368, at *5. And "[w]hether a setoff represents a substantive challenge to an award . . . depends on whether the parties dispute the proposed offsetting debt." *Id.* at *6. If there are "genuine questions as to the validity, finality, or amount of

the underlying debt," the court may not entertain the defense. *Id.* Such genuine questions exist here.

Start with validity. Respondent argues that the value Petitioners have gained from continued operation of the land is functionally a "debt" to be applied against the awards. *See* Resp't's Opp'n at 10, 12. But the award does not treat it as such. The tribunal awarded Petitioners one of two sums certain depending *only* on whether Respondent timely made restitution. It did not condition the amount on whether Petitioners operated the land, as it did for other elements of the award. *Compare VP* ICSID Ruling ¶ 1020, *with id.* ¶¶ 495–496, 944 (declining to award certain pre-award interest because Petitioners remained in possession of large portions of some expropriated property). The court is not empowered to reconsider that choice. To do so would essentially reopen the merits of the tribunal's decision, and "[f]ull faith and credit's bar against relitigation is unyielding." *Valores Mundiales*, 87 F.4th at 519.

Next consider the amount. Respondent all but concedes to the existence of a genuine question, as it states only that Petitioners' continued operation of the land has "provided substantial compensation *in an amount to be determined*." *VP* Stmt. of Facts ¶ 17 (emphasis added). For their part, Petitioners contend that Respondent has not put forth any evidence that Petitioners have continued to operate the expropriated assets or, if they have, of the value they have derived from doing so. *BT* Reply at 11–12; *see also* Resp't's Opp'n at 8 (acknowledging that determining the proper setoff amount could "require additional fact finding, including targeted discovery"). The court's limited mandate in these enforcement proceedings does not permit it to wade into this dispute.

To be sure, as Respondent points out, this court has previously recognized a setoff defense to an ICSID award. *See* Resp't's Opp'n at 6 (citing *Micula v. Government of Romania*,

404 F. Supp. 3d 265 (D.D.C. 2019)).  But unlike in this case, doing so there did not "require[] adjudication of substantive issues implicating the merits of the award."  *Perenco*, 2023 WL 2536368, at *5.  In *Micula*, the requested setoff was based on defined amounts of tax setoffs and forced executions.  *See* 404 F. Supp. 3d at 283–84.  Their validity and finality could be objectively ascertained, and the only amount the court ultimately applied against the award came from seized funds from which "Petitioners [did] not dispute that they [had] received some money" and provided an estimate as to how much they had received.  *See id.* at 284.  Here, by contrast, neither party has been able to provide such definition, making setoff inappropriate.

## C.

Since the court cannot entertain Respondent's setoff defense, it also rejects Respondent's joinder argument.  Relying on Federal Rule of Civil Procedure 19, Respondent contends that the court must dismiss this case because Petitioners failed to join a necessary party "for the purposes of setoff."  Resp't's Opp'n at 14.  Because setoff is improper, joinder for that limited purpose is unnecessary.

In any event, it is Respondent's burden to show that a case must be dismissed for failure to join a necessary party.  *See McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 151 (D.D.C. 2014).  Respondent's cursory argument failed to address key issues, such as whether complete relief is possible without joinder or whether the failure to join will prejudice a current party.  *See id.*; Resp't's Opp'n at 14–16.  The court therefore will not dismiss the case on this ground.

## D.

Respondent lastly raises what it claims are "three genuine issues of material fact that do not allow the Court to calculate the amounts claimed by the Border Petitioners."  *Id.* at 16.  The court briefly disposes of each.

8

*Post-Award Interest.*   Respondent states that the awards "do not permit" post-award interest. *See id.* at 16–17.  But the awards plainly provide for it. *See VP* ICSID Ruling ¶ 1022; *BT* ICSID Ruling ¶ 1014.  The court must enforce the award as written. *See Khudyan v. Republic of Armenia*, No. 24-cv-1054 (RBW), 2025 WL 1927984, at *5 (D.D.C. July 14, 2025) (quoting *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 607 (2d Cir. 2024)).

Still, Respondent reasons that, because the tribunal declined to award certain pre-award interest given that Petitioners continued to operate some expropriated land, *see VP* ICSID Ruling ¶ 944, "[t]he same conclusion should hold true for post-award interest," Resp't's Opp'n at 11–12; *see also id.* at 17.  But that would contravene the text of the award, which did not similarly condition post-award interest on who operates the land. *See supra* Section III.B.  The court may not reevaluate the tribunal's choice.

*Currency Conversion.*  Citing the award's directive that some of the arbitration costs must be paid to Petitioners "in the currency incurred," Respondent faults the *Border Timbers* Petitioners for converting the relevant amounts from the "currency incurred"—British pounds and Zimbabwean dollars—into U.S. dollars in their petition.  Resp't's Opp'n at 17 (citing *BT* ICSID Ruling ¶ 1015).  While the court acknowledges that "conversion of ICSID awards is the norm in proceedings under § 1650a," *Micula*, 404 F. Supp. 3d at 285 n.12; *BT* Reply at 20, the language of the award is clear as to these particular costs.  The court will enforce it accordingly.  While this is not an issue of fact that precludes granting summary judgment, in the proposed judgment that follows, the parties shall convert this aspect of the *Border Timbers* award back to the currencies specified in the tribunal's decision. *See BT* ICSID Ruling ¶ 1015.

*Interest Rate.*  The awards used the USD LIBOR rate as the measure for any pre- or post-award interest.  *See BT* ICSID Ruling ¶¶ 1014, 1016; *VP* ICSID Ruling ¶¶ 1022, 1024.  The USD LIBOR rate, however, is no longer published.  *See* Resp't's Opp'n at 18; *BT* Reply at 21.  Petitioners substituted in the Secured Overnight Financing Rate ("SOFR"), "citing numerous sources that show the financial industry has replaced LIBOR with SOFR."  *BT* Reply at 21 & n.17; *see also* Resp't's Opp'n at 19 ("In the wake of the end of LIBOR, a number of new rates followed.  In the United States, the predominant choice is SOFR, as announced by the Federal Reserve.").  At least one other court in this District has adopted this approach.  *See DP World Djibouti FZCO v. Republic of Djibouti*, No. 23-cv-1524 (CKK), 2024 U.S. Dist. LEXIS 143153, at *3 n.3 (D.D.C. July 23, 2024).

Respondent argues for a different interest rate, the euro-short term rate ("€STR").  Resp't's Opp'n at 20.  As Respondent sees it, "[t]he rate reflects the risks of banks in the home jurisdictions of the von Pezold family, who were the ones that initiated the lawsuit and control any settlement."  *Id.*  Respondent also points out that the €STR is a lower interest rate, which it contends is appropriate because Petitioners unreasonably delayed filing this action and thus "the risk of changing post-award interest to €STR instead of SOFR fell squarely on Petitioners, who should then assume the obligation of using the lower, more appropriate, rate."  *Id.* at 20–21.

The SOFR is the more appropriate rate.  For the same reasons Respondent raises now, the tribunal could have tied the interest rate to the currency in the von Pezolds' home jurisdiction.  But it did not, instead opting for an interest rate tied to the U.S. dollar.  This court will replace the LIBOR rate with the most widely adopted interest rate that does the same.  Any purported delay—a claim that Respondent does not much substantiate—does not change this conclusion.

Ultimately, none of these three issues preclude granting summary judgment to Petitioners.

**IV.**

For the aforementioned reasons, the court grants the *von Pezold* Petitioners' Motion for Summary Judgment, ECF No. 74, and the *Border Timbers* Petitioners' Motion for Summary Judgment, ECF No. 65.  It is ordered that judgment shall be entered in favor of Petitioners and against Zimbabwe.  The parties shall submit by July 31, 2026, a draft final judgment that reflects all damages awarded to Petitioners by the tribunal, with the following caveats: (1) the amount of damages shall be those specified if Respondent did not timely make restitution, adjusted to avoid double recovery for any overlapping assets claimed by the two groups of Petitioners; (2) the relevant aspects of the *Border Timbers* costs award shall be converted back to the specified currencies; (3) any pre- or post-award interest shall be assessed at the SOFR rate; and (4) as the parties agree, any post-judgment interest shall be calculated at the statutory interest rate set forth at 28 U.S.C. § 1961.

Dated: July 24, 2026

Amit P. Mehta
United States District Judge